IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| GARY PIERCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 06-3288 |
| ) | |
| ILLINOIS DEPARTMENT OF HUMAN ) | |
| SERVICES, et al., ) | |
| ) | |
| Defendants. ) | |

**OPINION**

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on a Motion for Summary Judgment (d/e 27) filed by Defendants Illinois Department of Human Services (DHS) and Illinois School for the Deaf (ISD) (collectively the DHS Defendants). Plaintiff Gary Pierce is an African-American male and a former employee of Defendant ISD, which is operated by Defendant DHS. Plaintiff's eight-count Complaint (d/e 1) alleges claims under 42 U.S.C. § 1983 and 42 U.S.C. § 2000e (Title VII) against a variety of defendants including DHS and ISD. The parties have consented to a determination of this case by the United States Magistrate Judge, pursuant to 28 U.S.C. § 636. Order, dated July 17, 2007 (d/e 17). For the reasons set forth

below, the DHS Defendants' Motion for Summary Judgment (d/e 27) is allowed.

Pierce was employed by ISD from June 28, 1994 until October 4, 2006. Pierce was hired for the position of residential care worker. Pierce asserts that DHS and ISD violated Title VII by discriminating against him based on his race and retaliating against him for filing a charge of discrimination with the Illinois Department of Human Rights (IDHR) in December 2002. See <u>Memorandum of Law in Support of Defendants' Motion for Summary Judgment (d/e 28) (DHS Defendants' Memorandum)</u>, Ex. E-5, <u>Charge of Discrimination No. 2003SF1976 (2002 charge of discrimination)</u>. Pierce asserts numerous incidents of discrimination/ retaliation. DHS and ISD argue that all of Pierce's claims are barred based on Pierce's failure to exhaust administrative remedies except for one arising out of an alleged improper failure to promote in February 2006. The Court agrees.

A plaintiff wishing to sue under Title VII must first exhaust his administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). <u>Tyson v. Gannett Co., Inc.</u>, 538 F.3d 781, 783 (7th Cir. 2008). Pierce filed the charge of discrimination

underlying this case with the IDHR on March 30, 2006. <u>DHS Defendants' Memorandum</u>, Ex. A, <u>Charge of Discrimination No. 2006SF2551 (2006 charge of discrimination)</u>, p. 1-2. A work sharing agreement exists between the EEOC and the IDHR; thus, Pierce's 2006 IDHR charge of discrimination satisfies the exhaustion requirement for issues that fall within its scope. See <u>Lapine v. Edward Marshall Boehm, Inc.</u>, 1990 WL 43572, at *3 (N.D .Ill. March 28,1990). "A Title VII plaintiff may bring only those claims that were included in [his] EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations. The rule is meant both to give the EEOC and employer an opportunity to settle the dispute and to give the employer fair notice of the conduct about which the employee is complaining." <u>Geldon v. South Milwaukee School Dist.</u>, 414 F.3d 817, 819 (7th Cir. 2005). Pierce's 2006 charge of discrimination alleges that DHS and ISD unlawfully failed to promote him in February 2006 because of his race and in retaliation for filing the 2002 charge of discrimination. Specifically, the 2006 charge of discrimination asserts that Pierce was qualified to perform the duties of residential supervisor, but was denied a promotion to the position in February 2006. According to the charge, Pierce was informed that the

denial of the promotion was related to his failure to obtain the proper certification of manual communication interpreter.  The charge asserts that the successful applicant was Caucasian and had similar credentials and training to Pierce.

Clearly the 2006 charge on its face is limited to the alleged improper failure to promote in February 2006.  Pierce contends that additional acts of alleged discrimination should be considered because he has been subjected to a hostile work environment and the numerous acts of discrimination/retaliation are all part of the same unlawful employment practice.  However, his charge of discrimination makes no reference to hostile work environment or any conduct other than the February 2006 failure to promote.  In the section of the IDHR form that addresses date of discrimination, Pierce indicates only February 2006, and he did not check the box indicating that the discrimination was a "continuing action." Charge of Discrimination No. 2006SF2551, p. 1.  The conduct alleged to be unlawful is expressly characterized as the February 2006 denial of the promotion to the residential supervisor position. As the Supreme Court instructs, "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of

discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). Therefore, all claims against DHS and ISD are barred as outside the scope of Pierce's charge of discrimination except for the one arising out of the alleged improper failure to promote in February 2006.

The relevant undisputed background facts are as follows. Pierce began employment with ISD as a residential care worker. Residential care workers are required to know how to communicate using manual communication, also known as sign language. In June 2005, ISD, through DHS, solicited applicants for a residential services supervisor position. DHS Defendants' Memorandum, Ex. E-1. Pierce applied for the position, which would have been a promotion. Arthur Dignan, a deaf, Caucasian male, was hired for the position. Applications for the residential services supervisor position were processed by DHS's Bureau of Recruitment and Selection. The bid record for the residential services supervisor position shows five applicants, two of whom already worked for DHS. Id., Ex. E-3.

Mary Alice Stouffe, a human resource specialist with DHS, was responsible for determining who was eligible to interview for the position

and for preparing interview packets. In order to be eligible for an interview, a candidate must have a current open competitive grade or a promotional grade for the position. Id., Ex. D, Affidavit of Mary Alice Stouffe, ¶ 1. The grades are assigned by the Illinois Department of Central Management Services (CMS). Only internal candidates can receive promotional grades; however, internal candidates may elect to apply under an open competitive grade as well. Stouffe avers that, at the time she reviewed the applications for the residential services supervisor position, she believed that all interview candidates were also required to have a manual communication (MC) option. Id., ¶ 2. Stouffe avers that it was brought to her attention in March 2008, in connection with the current litigation, that promotional grade candidates for the residential services supervisor position did not need an MC option to be invited to interview. The record reveals that CMS does not issue the MC option with promotional grades. DHS Defendants' Memorandum, Ex. C, Affidavit of Kimberly Herrington, ¶ 3. Rather, promotion grade candidates should be tested for sign language skill at the time of the interview. Id. According to Stouffe, one outside candidate, Dignan, and one internal candidate, Pierce, were the only candidates who possessed the required grade for the position. Stouffe avers that Dignan

was the only candidate who possessed the MC option. Thus, in Stouffe's opinion, Dignan was the only candidate eligible to be invited to interview for the residential services supervisor position. Stouffe states that, at the time that she evaluated Pierce's application, she did not know his race.

Kimberly Herrington is a human resource specialist with DHS's Bureau of Recruitment and Selection. Her responsibilities include conducting interviews and selecting and hiring candidates for the agency. Herrington received the bid record and interview packet for the residential services supervisor position from Stouffe. According to Herrington, one candidate, Dignan, was highlighted on the bid record. Herrington avers that she followed standard protocol as she understood it to be in 2005 by inviting the highlighted candidate to interview. DHS Defendants' Memorandum, Ex. C, Affidavit of Kimberly Herrington, ¶ 4. Herrington avers that, prior to extending the invitation to interview, she reviewed the bid record, checked the grades against the CMS computer system, and determined that Dignan was the only candidate with both the requisite grade and the MC option. Id., ¶ 9. Herrington states that she believed that, when a position required manual communication, all candidates were required to have the MC option. According to Herrington, interview packets

requiring an MC option make up a very small percentage of packets processed by the Bureau of Recruitment and Selection. Herrington avers that, in April 2006 after Pierce had filed a complaint relating to the denial of promotion, Herrington's supervisor explained to her that candidates with promotional grades do not need the MC option and should instead be tested for sign language skill at the time of the interview. Herrington states that she also learned at that time that CMS does not issue the MC option with a promotional grade. According to Herrington, she did not consider race when selecting and interviewing candidates. Herrington further states that, in November 2005, she received an email from Defendant Randy Shearburn, the ISD personnel manager, indicating that he would like Pierce to be invited to interview for the residential services supervisor position. Herrington responded that she was unable to invite Pierce and other applicants because they did not submit for an MC option.

## ANALYSIS

Pierce asserts Title VII claims of race discrimination and retaliation arising out of the February 2006 failure to promote. DHS and IDS contend that they are entitled to summary judgment on each of these claims. Summary judgment is appropriate when "the pleadings, depositions,

answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact and that judgment as a matter of law is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). When a properly supported motion for summary judgment has been made, the party opposing summary judgment may not merely rest on the pleadings but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "A party must present more than mere speculation or conjecture to defeat a summary judgment motion." Liu v. T & H Machine, Inc., 191 F.3d 790, 796 (7th Cir. 1999). The Court must consider the evidence in the light most favorable to the non-moving party, here the Plaintiff, and draw all reasonable inferences in his favor. See Anderson, 477 U.S. at 255.

A. Race Discrimination Claim

Under Title VII, employers may not discriminate "against any individual with respect to [his] compensation, terms, condition, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Pierce identifies no direct or circumstantial evidence that points directly to a discriminatory reason for the employment action; thus, he must proceed under the familiar indirect burden-shifting approach set out in <u>McDonnell Douglas Corp. v. Green</u>. 411 U.S. 792 (1973).  To establish a prima facie case of race discrimination under <u>McDonnell Douglas</u>, Pierce must show that (1) he is a member of a protected group, (2) he applied for and was qualified for the position, (3) he was not hired for the position, and (4) a person outside of the protected class with similar or less qualifications was hired for the position.  <u>See</u> <u>Ellis v. Bradley</u>, 2009 WL 174991, *4 (N.D. Ill. January 23,2009).  If Pierce does so, the burden shifts to Defendants to articulate a legitimate nondiscriminatory  reason for the adverse employment action.  <u>See McDonnell Douglas</u>, 411 U.S. at 802.  If Defendants meet that burden, Pierce must show that the proffered reasons are pretextual.  <u>Id</u>. at 803-04.  The Court is cognizant that, at the summary judgment stage, Pierce's

burden is only to demonstrate the existence of genuine issues of material fact, and not one of proof.

The DHS Defendants concede that Pierce is a member of a protected class and that he applied for, but was denied, the residential services supervisor position.  They argue that Pierce cannot prove he was qualified for the position or that Dignan had similar or less qualifications for the position than Pierce.  Viewing the evidence in the light most favorable to Pierce, however, questions of fact remain on these issues.  The Vacancy Notice for the residential service supervisor position lists the following requirements:

> Requires equivalent of an AA degree in child care, sociology, human services etc., plus two years experience in direct child care; or two years supervisory experience in child care plus three years experience in the care of persons with disabilities. Requires ability to communicate effectively with persons who are hearing impaired or deal via sign language at the appropriate SCPI level.

<u>DHS Defendants' Memorandum</u>, Ex. E-1.  The DHS Defendants contend that, because Pierce was not tested for sign language skill, it is purely speculative that he would have performed sign language at the appropriate SCPI level to qualify for the residential service supervisor position.  However, the record reveals that the residential care worker position which Pierce held required him to utilize sign language in daily communication

with students, parents, and staff.  Id., Ex. E-6.  Thus, a material factual issue exists on this point.  The DHS Defendants further assert that Dignan had superior qualifications to Pierce.  The record reveals that Pierce has a Bachelor's degree in social work and has worked in residential services at ISD since 1994.  Pierce does not dispute that Dignan holds a Bachelor's degree in humanities and two master's degrees, one in deaf education and one in counseling, although Pierce does proffer, without evidentiary support, that deaf individuals are educated differently from hearing individuals due to their disability.  Pierce does not dispute that Dignan had worked as a deaf educator for over twenty-two years and in residential services for over five years.  However, comparing Pierce and Dignan's qualifications to the requirements of the residential service supervisor position, the Court finds that material factual issues exist as to whether Dignan was more qualified than Pierce.  The DHS Defendants fail to establish that they are entitled to summary judgment at this step.

     The prima facie case is merely the first step in the inquiry, however.  The DHS Defendants proffer a legitimate nondiscriminatory reason for the adverse employment action.  They submit that the decision not to interview Pierce for the promotion resulted from Stouffe and Herrington's honestly-held, but erroneous belief that all applicants were required to have an MC

option to interview for the residential service supervisor position.  To survive summary judgment, Pierce must present evidence that would allow a reasonable jury to find this reason to be pretextual.  As the Seventh Circuit instructs, "[p]retext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action."  <u>Argyropoulos v. City of Alton</u>, 539 F.3d 724, 736 (7th Cir. 2008) (internal quotations and citation omitted).  Pierce attempts to show pretext by arguing that, in 2005, he was invited to interview for an office assistant position which required an MC option despite the fact that he did not have the MC option.  First, Pierce presents no admissible evidence to support this assertion and fails to identify any evidence whatsoever of the grade/option he was assigned during the office assistant selection process.[1]  Additionally, the evidence that he does present, a letter informing him that he would not receive the office assistant position, reveals that selection process for the office assistant position was handled by interviewing officer Deborah Martin.  <u>Response to Defendants Motion for Summary Judgment (d/e 32)</u>, Ex. A.  There is nothing to indicate that either Stouffe or Herrington were involved in evaluating the

---

[1] The record reveals that current state employees have the option of applying for positions under either the internal promotional grade or with an open competitive grade. CMS evaluates open competitive grade applicants for the MC option; thus, an internal bidder applying under this grade could achieve an MC option.

applications for the office assistant position or to rebut their assertions that they mistakenly believed an MC option was necessary for the residential services supervisor position. Pierce fails to identify evidence that would allow a reasonable jury to find DHS and ISD's proffered reason for hiring Dignan rather than promoting Pierce to be pretextual. Thus, the DHS Defendants are entitled to summary judgment on Pierce's race discrimination claim.

B. Retaliation Claim

Title VII prohibits employers from retaliating against employees for opposing discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-3 (a). Pierce may use either the direct or indirect methods of proof to support his retaliation claim. Gates v. Caterpillar, 513 F.3d 680, 685 (7th Cir. 2008). In order to successfully establish retaliation under the direct method of proof, Pierce must "offer evidence that he engaged in a statutorily protected activity, that the defendants subjected him to an adverse employment action and that a causal connection exists between the two events." Treadwell v. Office of Ill. Sec'y of State, 455 F.3d 778, 781 (7th Cir. 2006). Under Seventh Circuit precedent, "circumstantial evidence that is relevant and probative on any of

the elements of a direct case of retaliation may be admitted and, if proven to the satisfaction of the trier of fact, support a case of retaliation." Id.

Pierce's 2002 charge of discrimination constitutes statutorily protected activity, and the February 2006 failure to promote constitutes an adverse employment action. Pierce, however, fails to identify evidence sufficient to support a finding that a causal connection existed between the two events. Pierce points only to the temporal proximity between the two events. The Seventh Circuit has held that timing of an adverse employment action may be circumstantial evidence of a retaliatory motive. See Paluck v. Gooding Rubber, Co., 221 F.3d 1003, 1009 (7th Cir. 2000). The Court of Appeals cautions, however, that "in order to support an inference of retaliatory motive, the [adverse employment action] must have occurred fairly soon after the employee's protected expression." Id. at 1009-10 (internal quotations and citation omitted). The Court of Appeals has characterized delays of nearly a year, eight months, five months, and six months, standing alone, to be "too long to raise an inference of discrimination." Id. at 1010 (collecting cases). In the instant case, Pierce's protected activity occurred in December 2002, the decision not to grant Pierce an interview for the residential services supervisor position was made at some point between July 2005 and December 2005, and Pierce

was denied the promotion in February 2006.  Thus, at the very least, two and a half years elapsed between Pierce's protected activity and the alleged retaliation.  This period is too long, standing alone, to support a finding that a causal connection existed between the two events.

Unable to succeed under the direct proof standard, Pierce is left with the indirect method, which requires an initial showing that, "(1) after filing a charge [the employee] was subject to adverse employment action; (2) at the time, [the employee] was performing his job satisfactorily; and (3) no similarly situated employees who did not file a charge were subjected to an adverse employment action." Brown v. Illinois Dept. of Natural Resources, 499 F.3d 675, 684 (7th Cir. 2007).  If Pierce meets this burden, the burden then shifts to Defendants to present a non-discriminatory reason for the failure to promote.  Id.; see also Tomanovich v. City of Indianapolis, 457 F.3d 656, 663 (7th Cir. 2006).  If the DHS Defendants carry that burden, Pierce is again charged with proving that the stated reason is pretextual. As the set forth above in the analysis of Pierce's discrimination claim, the DHS Defendants submit that the decision not to interview Pierce for the promotion resulted from Stouffe and Herrington's honestly-held, but erroneous belief that all applicants were required to have an MC option to interview for the residential service supervisor position.  Pierce fails to

identify evidence that would allow a reasonable jury to find that this proffered reason was pretextual. Thus, the DHS Defendants are entitled to summary judgment on Pierce's retaliation claim as well.

## CONCLUSION

THEREFORE, the Motion for Summary Judgment (d/e 27) filed by Defendants Illinois Department of Human Services and Illinois School for the Deaf is ALLOWED. Summary judgment is entered in favor of Defendants Illinois Department of Human Services and Illinois School for the Deaf and against Plaintiff Pierce on Counts VII and VIII of Pierce's Complaint.

IT IS THEREFORE SO ORDERED.

ENTER:   March 3, 2009

FOR THE COURT:

*s/ Byron G. Cudmore*
_____
BYRON G. CUDMORE
UNITED STATE MAGISTRATE JUDGE