**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| GARY PIERCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-3288 |
| | ) | |
| ILLINOIS DEPARTMENT OF HUMAN | ) | |
| SERVICES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on a Motion for Summary Judgment (d/e 29) filed by Defendants Chuck Nash, Randy Shearburn, Curt Kuhn, Jason Frye, Debbie Warden, and Joan Fornay (collectively the Individual Defendants). Plaintiff Gary Pierce is an African-American male and a former employee of Illinois School for the Deaf (ISD), which is operated by the Illinois Department of Human Services (DHS). Plaintiff filed an eight-count Complaint (d/e 1), alleging claims under 42 U.S.C. § 1983 and 42 U.S.C. § 2000e (Title VII) against the Individual Defendants, ISD, and DHS. The parties have consented to a determination of this case by the United States Magistrate Judge, pursuant to 28 U.S.C. § 636. Order (d/e 17), dated July 17, 2007. In an Opinion (d/e 44), dated March 3, 2009,

this Court granted summary judgment in favor of ISD and DHS on Pierce's Title VII claims, set forth in Counts VII and VIII of the Complaint. Counts I through VI remain, alleging § 1983 claims against the Individual Defendants in their individual capacities. The Individual Defendants assert that they are entitled to summary judgment on each of these claims. For the reasons set forth below, the Individual Defendants' Motion for Summary Judgment is allowed.

Pierce was employed by ISD from June 28, 1994 until October 4, 2006. Pierce was hired for the position of Residential Care Worker. At all relevant times, Defendant Nash was the Director of Student Life at ISD. From 1994 until 2000, Defendant Shearburn was a Residential Supervisor at ISD. He was promoted to the position of Time Keeper in 2000. In 2001, Shearburn was promoted to Personnel Manager of ISD. Defendant Kuhn became a Residential Supervisor at ISD in 2001 and was Pierce's supervisor from 2001 until September 2005. Defendant Frye was Acting Dean for IDS and was Pierce's supervisor from 2003 to 2005. Defendant Fornay was Superintendent of ISD from 1995 until June 2006. At all relevant times, Defendant Warden was Personnel Manager for the Illinois School for the Visually Impaired.

Pierce asserts that he was wrongfully denied positions at ISD, the Illinois Department of Central Management Services (CMS), and the Illinois School for the Visually Impaired.  Pierce further asserts that he was wrongfully denied the opportunity to become certified in a position with Healthcare and Family Services.  Pierce also claims that he was disciplined more severely than other employees on several specific occasions.  The Individual Defendants assert that they are entitled to summary judgment on all of Pierce's claims.  Given the number of Defendants and incidents involved, the Court, for clarity, will address additional facts in its analysis as they relate to Pierce's individual claims.

## ANALYSIS

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party has the initial burden of demonstrating the absence of a

genuine issue of material fact and that judgment as a matter of law is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  When a properly supported motion for summary judgment has been made, the party opposing summary judgment may not merely rest on the pleadings but must "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  "A party must present more than mere speculation or conjecture to defeat a summary judgment motion."  Liu v. T & H Machine, Inc., 191 F.3d 790, 796 (7th Cir. 1999).  The Court must consider the evidence in the light most favorable to the non-moving party, here the Plaintiff, and draw all reasonable inferences in his favor.  See Anderson, 477 U.S. at 255.

Pierce claims that the Individual Defendants discriminated against him because of his race in violation of 42 U.S.C. § 1983.  In order to succeed under § 1983, Pierce must demonstrate that a government official, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States.  Pierce's § 1983 claims are based on the Fourteenth Amendment's Equal Protection Clause, which mandates that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.  This is essentially "a

direction that all persons similarly situated should be treated alike."
<u>Vision Church v. Village of Long Grove</u>, 468 F.3d 975, 1000 (7th Cir. 2006).

Pierce identifies no direct or circumstantial evidence that points directly to a discriminatory reason for the alleged adverse employment actions; thus, he must proceed under the familiar indirect burden-shifting approach set out in <u>McDonnell Douglas Corp. v. Green</u>.  411 U.S. 792 (1973).  Pierce may establish a prima facie equal protection violation using the same standard of proof the Court previously applied to his Title VII claims against DHS and ISD.  <u>Salas v. Wisconsin Dept. of Corrections</u>, 493 F.3d 913, 926 (7th Cir. 2007).  "The only difference is that a Title VII claim is against an employer, while an equal protection claim is against individual employees."  <u>Id</u>. (citing <u>Hildebrandt v. Ill. Dep't of Natural Res.</u>, 347 F.3d 1014, 1036 (7th Cir. 2003)).  Thus, Pierce must show that: (1) he is a member of a protected class, (2) his job performance met legitimate expectations, (3) he suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than he was.  <u>Burks v. Wisconsin Dept. of Transp.</u>, 464 F.3d 744, 750-51 (7th Cir. 2006).  If Pierce establishes a prima facie case, the burden shifts to the Defendants to proffer a legitimate,

nondiscriminatory reason for the challenged actions.  If Defendants meet this burden, the burden shifts back to Pierce to demonstrate that the proffered reasons are pretextual.  Id. at 751.

A.  Failure to Promote, Transfer, or Hire

Pierce asserts that he was wrongfully denied a Public Service Administrator position at the Illinois School for the Visually Impaired, an Executive Assistant position at the Illinois School for the Visually Impaired, a Guard II position at ISD, an Office Assistant position at ISD, and a Human Resource Associate position at CMS.  Pierce further asserts that he was wrongfully denied the opportunity to become certified in a position with Healthcare and Family Services.  The Court addresses the positions chronologically.

1.  Illinois School for the Visually Impaired Positions

On September 2, 2004, Pierce applied for a Public Service Administrator position with the Illinois School for the Visually Impaired, a separate entity which like ISD is operated by DHS.  Defendant Warden, as Personnel Director for the Illinois School for the Visually Impaired, was involved with filling the position.  Warden avers that the position required a PSA Option 6 grade, but that, at the time he applied, Pierce had only a

PSA Option 1 grade.  <u>Memorandum of Law in Support of Defendants'</u>
<u>Motion for Summary Judgment (d/e 30) (Defendants' Memorandum)</u>, Ex.
H, ¶ 3.  According to Warden, because Pierce did not have a grade for
PSA Option 6, he was not deemed qualified for the position and was not
awarded an interview.  <u>Id</u>., ¶ 4.  Pierce identifies no evidence to contradict
Warden's affidavit, and he concedes that, at the time he initially applied for
this position, his application was rejected because he did not have the
proper grade for the position.  <u>Id</u>., Ex. B, p. 88-90.  Pierce asserts that he
subsequently obtained the proper grade, but was not interviewed.  Pierce
testified in his deposition that he was told a white female was hired for the
position.  <u>Id</u>., p. 110-11.  Given the record evidence, Pierce is unable to
establish a prima facie case of discrimination relating to this position.
Pierce fails to present evidence that he was qualified for the position at the
time that he applied for it, and there is no evidence of the qualifications of
the individual who was hired for the position.  Thus, Pierce fails to identify
evidence sufficient to establish the second and fourth prongs of his prima
facie case.  The Individual Defendants are entitled to summary judgment
on Pierce's claim arising out of the Public Service Administrator position.

The record evidence relating to the Executive Assistant position at the Illinois School for the Visually Impaired is scant.  Pierce's Complaint alleges that he applied for a second Public Service Administrator position at the Illinois School for the Visually Impaired in December 2004. Complaint, ¶ 30.  Pierce testified in his deposition that his wife, who was an employee of the Illinois School for the Visually Impaired, told him that, after someone was hired for the original Public Service Administrator position, the title or grade of the position was changed to Executive II.  Defendants' Memorandum, Ex. B, p. 90.  Pierce states that he then "went out and got a grade for the Exec I or II," but that he was not interviewed for the position. Id.  It is unclear from the record evidence whether the Executive Assistant position was a separate position or just the retitled Public Service Administrator position.  In either case, there is no evidence of the qualifications of the individual who was hired for the position.  Thus, Pierce is unable to establish a prima facie case for claims based on the Executive Assistant position.

2.  Guard II Position at ISD

Also in 2004, Pierce applied for a Guard II position at ISD.  According to Pierce, Defendant Fornay supported him for the position.  Defendants'

Memorandum, Ex. B, p.121-22.  Pierce was interviewed for the position by

John Heyer and Anita Raffa, but a Caucasian male was hired for the

position.  Pierce asserts that he was more qualified for the position than the

individual who was hired because he already worked at ISD, had the ability

to communicate using sign language, and had previously worked as a

certified armed guard in Louisiana.  Pierce concedes, however, that none

of these qualities were requirements for the Guard II position.  Id., p. 120-

23,129.  Additionally, Pierce offers no admissible evidence regarding the

qualifications of the individual who was hired.  Therefore, Pierce's prima

facie case again fails at the fourth prong.  Pierce fails to identify evidence

sufficient to support a finding that the man who was hired for the Guard II

position had the same or less qualifications for the position than Pierce did.

Summary judgment is appropriate for claims relating to this position.

     3.  Human Resource Associate Position at CMS

In March 2005, a Personnel Secretary at ISD told Pierce about a job

opening at CMS.  The open position, a Human Resource Associate,

required a manual communication (MC) option.[1]  Pierce applied for the

position.  It was his understanding that CMS wanted someone who knew

---

[1]Manual communication is also known as sign language.

sign language to work in the resource area where potential applicants

tested and filled out applications.  In a letter, dated April 5, 2005, CMS

Internal Personnel employee Joseph Ashcraft informed Pierce that he

would not be offered the Human Resource Associate position because of

an inaccurate response on his application relating to past state

employment.  <u>Plaintiff's Response to d/e 27 Motion for Summary Judgment</u>

<u>(d/e 32) (Plaintiff's First Response)</u>, Ex. L.   According to Pierce, CMS

discovered the inconsistent information in a CMS database when it

investigated his background.  <u>Id</u>., Ex. L1: <u>Defendants' Memorandum</u>, Ex. B,

p. 78-79.  The record is devoid of evidence that any of the Individual

Defendants had any personal involvement in these events.  A defendant

can only be found liable under § 1983 if the "defendant was personally

responsible for the deprivation of a constitutional right."  <u>Johnson v.</u>

<u>Snyder</u>, 444 F.3d 579, 583-84 (7th Cir. 2006) (internal quotations and

citation omitted).  Furthermore, there is no evidence regarding the

individual who was ultimately hired for the position, which prevents Pierce

from establishing the fourth prong of his prima facie case.  Thus, the

Individual Defendants are entitled to summary judgment on Pierce's claim

arising out of the CMS Human Resource Associate position.

4.  ISD Office Assistant Position

In June 2005, ISD posted a vacancy notice for an Office Assistant position.  Plaintiff's First Response, Ex. A1.  According to Pierce, the Office Assistant position would have been a demotion, but he applied for it nevertheless and was interviewed.  Defendants' Memorandum, Ex. B., p. 189.  In early September 2005, Pierce was placed on administrative leave for an incident involving a confrontation between Pierce and co-worker Rhonda Liehr.  From November 2005 until May 2006, Pierce was away from his job on a medical leave of absence due to stress.  Despite the fact that he was on administrative leave, Pierce was interviewed for the Office Assistant position by Deborah Martin of DHS's Bureau of Recruitment and Selection and Defendant Shearborn.  Pierce testified that, after the interview, he saw Defendant Nash "hanging around in the hallway." Id., p. 191.  According to Pierce, Nash asked Shearborn whether the two were still going to lunch and then looked at Pierce "kind of funny." Id.  Pierce understood the comment and look to be an intentional indication by Nash that Pierce would not be chosen for the position.  Id., p. 193.  Pierce was informed by Martin in a letter, dated November 15, 2005, that he would not be offered the Office Assistant position.  The record lacks

evidence as to who was hired to fill the position, and Pierce testified that he does not know who was hired for the position, only that a "handicapped young lady" was being considered for it.  Id., p. 190-91.  This lack of evidence dooms Pierce's claim relating to this position as it prevents him from establishing the fourth prong of his prima facie case.  The Individual Defendants are entitled to summary judgment on Pierce's claims relating to the ISD Office Assistant position.

     5.  Healthcare and Family Services Position

In Pierce's final failure to promote claim, he asserts that he was wrongfully denied the opportunity to become certified in a position with Healthcare and Family Services.  As previously noted, in November 2005, Pierce was placed on stress leave from ISD.  He nevertheless continued to apply for positions at ISD and elsewhere.  In April 2006, Pierce received a promotion through the state's Upward Mobility program.  He was placed in a Human Service Caseworker position with the Illinois Department of Healthcare and Family Services, which was formerly the Illinois Department of Public Aid, an agency distinct from DHS.  Pierce did not return to ISD following the stress leave, but rather began training for the Human Service Caseworker position on May 1, 2006, along with seventeen

other individuals.  As a promoted employee, Pierce was subject to a four

month certification period in the new position.  Defendants' Memorandum,

Ex. M, Affidavit of Fran Jones, ¶ 3.  Supervisors are responsible for

recommending certification of subordinate staff based on their

performance.  Id., ¶ 4.  Fran Jones, a Public Service Administrator with

Healthcare and Family Services, was assigned to supervise Pierce from

June 15, 2006 until August 16, 2006.  Pierce and three Caucasian female

employees struggled with the training and under one-on-one guidance

following training.  As a result of Pierce's unsatisfactory performance,

Jones recommended that he not be certified for the position.  Id., ¶ 12.

The supervisors of the three Caucasian females also recommended  non-

certification, using the same performance criteria.

On August 16, 2006, Jones and another supervisor informed Pierce

that he had been approved to return to his former employer.  Pierce

refused, indicating that the Union had informed him that he could stay

there.  Defendants' Memorandum, Ex. M, Affidavit of Fran Jones, ¶ 15.

Jones stated that she would check with personnel and get back to Pierce.

During a second meeting that same morning, Pierce became belligerent

and frightened Jones.  Jones characterized Pierce's actions as "very

disrespectful" and indicated that she felt apprehensive about her personal safety and the safety of the other supervisor.  Id., ¶ 16.  Jones reported her concern to her supervisors, and at lunchtime, Pierce was escorted from the building by an employee from the Bureau of Internal Affairs.  Jones avers that she had no communication with DHS during the certification process and that she based the non-certification solely on Pierce's performance.  Id., ¶¶ 16, 19.

Healthcare and Family Services informed ISD that they would not be certifying Pierce.  Defendants' Memorandum, Ex. K, Affidavit of Randy Shearborn, ¶ 9.  Healthcare and Family Services also told ISD that Pierce's application was falsified.  Specifically, Healthcare and Family Services had discovered the Department of Corrections discharge, which Pierce had not listed on his application, as well as some convictions from Kane County, Illinois that were not disclosed.  Nash and Acting ISD Superintendent Marybeth Lauderdale decided to place Pierce on administrative leave once he returned to ISD to allow time to investigate the information.  Shearborn prepared the required paperwork.  Id.

On August 24, 2006, Pierce returned to ISD and was placed on administrative leave pending investigation.  Plaintiff's First Response,

Ex. H.  Documentation was gathered to substantiate the information

provided by Healthcare and Family Services.  <u>Defendants' Memorandum</u>,

Ex. L, <u>Affidavit of Marybeth Lauderdale</u>, ¶ 4.  Pierce was afforded a pre-

disciplinary meeting on September 27, 2006, which he failed to attend.

Based on Pierce's failure to attend the pre-disciplinary meeting, he was

placed on thirty-day suspension pending discharge as required under the

applicable collective bargaining agreement.  <u>Id</u>., ¶¶ 6-7.  On October 4,

2006, ISD received a letter of resignation from Pierce, which it accepted in

lieu of placing a record of termination in his personnel file.  <u>Id</u>., ¶ 8.

Pierce believes that he was not certified for the Human Service

Caseworker position because the Individual Defendants provided him with

a defamatory reference.  Pierce, however, fails to identify evidence to

support this conclusion.  The record reveals that Jones made the

recommendation for non-certification based on Pierce's poor performance

and that she had no contact with anyone from DHS.  Pierce is unable to

establish a prima facie case of discrimination relating to the non-

certification.  He fails to identify evidence that his job performance met

legitimate expectations or that another similarly situated individual who was

not in the protected class was treated more favorably than he was.  The

Individual Defendants are entitled to summary judgment on the claims relating to the Healthcare and Family Services position.

### B.  Discipline

Pierce asserts that he was disciplined more severely than other ISD employees on several occasions.  Pierce contends that Defendant Nash discriminated in the way he addressed issues that arose between Pierce and his co-workers.  Pierce further asserts that he was discriminated against in that (1) he received an "unauthorized absence," (2) he was mandated to work overtime, (3) he was counseled for wearing jeans with an insignia across the back, (4) he was disciplined for failure to complete a forty-five minute time sheet, and (5) he was placed under threat of discharge while on administrative leave for the Leihr incident.  When the Court considers claims of discriminatory discipline, "the second and fourth prongs of McDonnell Douglas merge."  Lucas v. Chi. Transit Auth., 367 F.3d 714, 728 (7th Cir. 2004).  The analysis of the employer's expectations falls away, and the Court must consider whether Pierce received treatment more harsh than that received by a similarly situated employee outside the protected class.  Id.

1.  Defendant Nash

Pierce contends that Defendant Nash discriminated against him by failing to appropriately address issues that arose between Pierce and his co-workers.  According to Pierce, in 1999, co-worker Fred Hoagland referred to him by a racial epithet while Pierce was involved in a work activity.  Pierce further asserts that his vehicle was vandalized while he was at work in November 2002, and Nash failed to investigate the incident. Although Pierce did not witness the vandalism, he suspected that co-worker Scott Stanberry was responsible for it.  Pierce reported the vandalism to Kuhn and Nash, as well as the Jacksonville Police Department.  Nash asked Pierce whether he or anyone else had seen Stanberry vandalize the car, and Pierce responded "No."  Defendants' Memorandum, Ex. F, Affidavit of Charles B. Nash, ¶ 4.  Nash avers that he told Pierce that, absent some solid evidence that Stanberry was responsible for the vandalism, nothing could be done.  Several days after the incident, Stanberry reported that Pierce confronted him about the damage to the vehicle and threatened him physically.  Nash and others investigated the incident.  Pierce denied threatening Stanberry.  While there was no corroboration of Stanberry's account, Pierce was placed on

administrative leave.  Finally, Pierce contends that he told Nash he felt uncomfortable during a diversity training held at ISD and Nash did nothing. Pierce testified that he was the only African-American present for the training and he became uncomfortable when the facilitator discussed O.J. Simpson and racial epithets.

The Individual Defendants assert that these claims are time barred. The statute of limitations for a suit under § 1983 follows the statute of limitations for a personal injury tort in the state in which the violation occurred. Savory v. Lyons, 469 F.3d 667, 672 (7th Cir. 2006).  Illinois has a two-year statute of limitations for personal injury claims. 725 ILCS 5/13-202.  Plaintiff argues that the identified actions are part of a continuing violation that should not be barred by the two-year statute of limitations. In construing the continuing-violation doctrine, the Supreme Court has held that there are two kinds of discriminatory actions: (1) discrete discriminatory acts and (2) acts contributing to a hostile work environment. National Railroad Corp. v. Morgan, 536 U.S. 101, 122 (2002).  It is clear that Pierce, who is proceeding pro se, is attempting to raise hostile work environment claims.  The Court will consider the incidents and will not deem them time barred.  The claims, however, fail on their merits.

The only discrete act that could rise to the level of adverse employment action is the administrative leave following Pierce's alleged threats to Stanberry.[2]  Pierce cannot establish a prima facie case relating to this incident because the record lacks evidence of a similarly situated employee who was  treated less severely.  Although both the allegations against Stanberry and Pierce were uncorroborated, the weight of evidence and the severity of the alleged conduct are not similar.  Pierce accused Stanberry of causing property damage to his car, although Pierce concedes that he did not see  Stanberry damage his car and he did not know of any other witness.  The record evidence reveals that, other employees have reported damage to personal property in the past, and corrective measures can be taken if there is a witness.  Defendants' Memorandum, Ex. F, Affidavit of Charles B. Nash, ¶ 5.  In contrast, Stanberry reported that Pierce physically threatened him to his face.  Pierce identifies no other potentially similarly situated employee; thus, he fails to identify anyone who was alleged to have engaged in similar conduct with similar evidence.  The Individual Defendants are entitled to summary judgment on this claim.

---

[2]The Court will consider all of the allegations against Nash in its analysis of Pierce's hostile work environment claims set forth in subsection C.

2.  Unauthorized Absence

On December 12, 2004, Pierce asked his supervisor, Defendant Kuhn, if he could take a personal day on December 15th to attend court. Pierce did not have a personal day to take, nor did he provide Kuhn with any documentation showing that he was required to go to court despite being requested to do so.  Defendants' Memorandum, Ex. C, Affidavit of Curt Kuhn, ¶ 14.  Kuhn denied Pierce's request for time off.  When Pierce failed to show up for work on December 15th, Kuhn issued him an unauthorized absence, for which Pierce received counseling.  Pierce contends that employees who reported to a different supervisor, Andy Fellow, were allowed to use whatever time they had on the books to attend to personal business.  One factor to consider in analyzing whether employees are similarly situated is whether the employees dealt with the same supervisor.  See Snipes v. Illinois Dept. of Corrections, 291 F.3d 460, 463 (7th Cir. 2002).  As the Seventh Circuit has recognized, different supervisors may enforce employer policies differently and "[d]ifferent employment decisions, concerning different employees, made by different supervisors . . . sufficiently account for any disparity in treatment, thereby preventing an inference of discrimination."  Id. (internal quotations and

citation omitted).  Pierce fails to identify any employee supervised by Kuhn who was allowed to take personal time off when he or she had none.  His prima facie case fails at the fourth prong, and the Individual Defendants are entitled to summary judgment on this claim.

### 3.  Mandated Overtime

Pierce claims that he was discriminated against by being mandated to work overtime.  Given the fact that ISD is a twenty-four hour residential care facility, the applicable collective bargaining agreement contains provisions under which supervisors can mandate employees to work all or a portion of a second shift to maintain the appropriate level of student supervision.  Defendants' Memorandum, Ex. J, Affidavit of Jason Frye, ¶¶ 4-5.  In January 2005, Pierce was mandated to work overtime, but he refused.  Id., ¶ 10.  Because Pierce had failed to attend a mandatory meeting within the eighteen months prior to the refusal, the refusal constituted a second mandate offense.  Id.  Pierce received a one-day suspension.  The record reveals that a Caucasian female Residential Care Worker also refused mandatory overtime during the 2004/2005 school year.  The female had no other mandate offenses and was issued a written reprimand.  The record reveals that Pierce received a written reprimand

after he failed to attend the mandatory meeting.  The record is devoid of evidence of any employee other than Pierce who refused two mandates within an eighteen month period.  Thus, Pierce is unable to show that he received treatment more harsh than that received by a similarly situated employee outside of his protected class.  The Individual Defendants are entitled to summary judgment on this claim.

4.  Dress Code Counseling

In February 2005, Pierce wore jeans with a large insignia of a crown across the back to work.  See Plaintiff's Response to d/e 29 Motion for Summary Judgment (d/e 33) (Plaintiff's Second Response), Ex. 26.  The record evidence reveals that Pierce was asked not to wear these jeans again because they appeared to be gang-related and thus an ISD student would be precluded from wearing this type of jeans.  Defendants' Memorandum, Ex. C, Affidavit of Curt Kuhn, ¶ 10.  Pierce asserts that Caucasian employees were allowed to wear designer jeans to work; however, Pierce presents no evidence of a similarly situated employee who wore clothing with suspected gang-related symbols to work.

Additionally, the work/discipline history presented by Pierce does not contain an entry regarding this incident, so it is unclear whether the incident

was recorded in Pierce's personnel file.  See Plaintiff's Second Response,

Ex. L1.  Even if it were, there is no evidence that the jeans incident resulted

in any actionable employment action.  The Seventh Circuit defines adverse

employment action broadly; it is well-established, however that "not

everything that makes an employee unhappy is an actionable adverse

action.  For an employment action to be actionable, it must be a significant

change in employment status, such as hiring, firing, failing to promote,

reassignment with significantly different responsibility, or a decision

causing a significant change in benefits."  Lewis v. City of Chicago, 496

F.3d 645, 653 (7th Cir. 2007).  Thus, Pierce fails to identify evidence

sufficient to establish an adverse employment action relating to the jeans

incident.  Pierce's prima facie case fails at the third and fourth prong, and

the Individual Defendants are entitled to summary judgment on this claim.

     5.  Forty-Five Minute Checklist Discipline

According to the record evidence, ISD conducts safety checks every

forty-five minutes between 3:30 p.m. and 6:00 a.m. in all settings where

youth are present.  Defendants' Memorandum, Ex. I, Affidavit of Joan M.

Forney, ¶ 6.  Residential Care Workers are required to complete

paperwork, sometimes referred to as a forty-five minute checklist, in

connection with the forty-five minute checks.  Id., ¶ 7.  Pierce failed to

complete the required paperwork in connection with a shift on February 26-

27, 2005.  As a result, he was given a five-day suspension, which was

imposed on May 17, 2005.  Id., ¶ 8.  The record reveals that discipline is

progressive under the applicable collective bargaining agreement.  Id.   In

approximately two and one half years prior to the imposition of the five-day

suspension, Pierce had received an oral reprimand, two incidents of

counseling, a written reprimand, and a one-day suspension.  Id.  Pierce

has presented a document revealing occasions on which other employees

failed to complete a forty-five minute checklist; however, the document

shows that the employee received some form of discipline on each

occasion.  Plaintiff's First Response, Ex. D.  Pierce fails to identify any

evidence that would support a finding that an employee with a discipline

history similar to his was treated less severely after failing to complete

forty-five minute check paperwork.  The Individual Defendants are entitled

to summary judgment on this claim.

      6.  Threat of Discharge

     As the Court noted in connection with its analysis of Pierce's

application for the ISD Office Assistant Position, Pierce was placed on

administrative leave in early September 2005 for an incident involving a confrontation between Pierce and co-worker Rhonda Liehr.  The record reveals that, on August 26, 2005, Liehr reported that Pierce threatened her in her staff office.  Pierce was placed on paid administrative leave from September 9, 2005 until October 3, 2005, while the matter was under investigation.  Defendants' Memorandum, Ex. C, Affidavit of Curt Kuhn, ¶ 22; Ex. I, Affidavit of Joan M. Forney, ¶ 11.  According to Forney, the matter was treated as a possible work place violence incident, and Liehr was not placed on administrative leave because she was viewed as the potential victim.  Id., Ex. I, Affidavit of Joan M. Forney, ¶ 11.  When the investigation was completed, it was determined to be a "he said/she said" situation, and no discipline was imposed.  Id.; Defendants' Memorandum, Ex. B, p. 290.  The incident is not reflected in the work/discipline history presented by Pierce.  See Plaintiff's Second Response, Ex. L1. Significantly, Pierce concedes that no one articulated any threat to his employment while he was on administrative leave.  Defendants' Memorandum, Ex. B, p. 292.  The Court is not convinced that the paid administrative leave constituted an adverse employment action under the circumstances of the instant case.  Even if it did rise to the requisite level,

Pierce's prima facie case fails because the record lacks evidence of a similarly situated employee, i.e., one who was accused of threatening a co-worker, who was treated more favorably than Pierce was.  The Individual Defendants are entitled to summary judgment on this claim as well.

   C.  Hostile Work Environment

   To the extent Pierce seeks to raise hostile work environment claims, the Individual Defendants are entitled to summary judgment on those claims as well.  In order to establish that he was subject to a hostile work environment based upon race, Pierce must present evidence sufficient to establish that he was subject to unwelcome harassment based on race, "the harassment was severe and pervasive so as to alter the conditions of [his] environment and create a hostile or abusive working environment;" and "there is a basis for employer liability."  Mason v. Southern Illinois University at Carbondale, 233 F.3d 1036, 1043 (7th Cir. 2000).  The Seventh Circuit sets a high bar for plaintiffs alleging a hostile work environment, recognizing that "Not every unpleasant workplace is a hostile environment.  . . . The workplace that is actionable is the one that is hellish."  Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1013 (7th Cir. 1997) (internal quotations and citation omitted).  The incidents Pierce identifies

are at worst sporadic incidents of insensitivity that do not rise to the required level of severity or pervasiveness to sustain a hostile work environment claim.

<u>CONCLUSION</u>

THEREFORE, the Motion for Summary Judgment (d/e 29) filed by Defendants Chuck Nash, Randy Shearburn, Curt Kuhn, Jason Frye, Debbie Warden, and Joan Fornay is ALLOWED.  Judgment is entered in favor of Chuck Nash on Count I, in favor of Randy Shearburn on Count II, in favor of Curt Kuhn on Count III, in favor of Jason Frye on Count IV, in favor of Joan Fornay on Count V, in favor of Debbie Warden on Count VI, and against Gary Pierce on all counts.  All pending motions are denied as moot.  THIS CASE IS CLOSED.

IT IS THEREFORE SO ORDERED.

ENTER:    March 4, 2009

*s/ Byron G. Cudmore*
_____
BYRON G. CUDMORE
UNITED STATE MAGISTRATE JUDGE